# Exhibit A

| | | |
|---|---|---|
| AOC-E-105　　Sum Code: CI<br>Rev. 9-14<br><br>Commonwealth of Kentucky<br>Court of Justice　　Courts.ky.gov<br><br>CR 4.02; Cr Official Form 1 | <br><br>**CIVIL SUMMONS** | Case #: **22-CI-001723**<br>Court:　**CIRCUIT**<br>County: **JEFFERSON Circuit** |

*Plantiff,* **GOODWIN, TARRA VS. FIRSTSOURCE SOLUTIONS, LLC**, *Defendant*

TO:　**CORPORATION SERVICE COMPANY**
　　　**421 WEST MAIN STREET**
　　　**FRANKFORT, KY 40601**

Memo: Related party is FIRSTSOURCE SOLUTIONS, LLC

The Commonwealth of Kentucky to Defendant:
**FIRSTSOURCE SOLUTIONS, LLC**

　　You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

　　　　　　　　　　　　　　　　　　　　　　　*David L. Nicholson*
　　　　　　　　　　　　　　　　　　　　　　　Jefferson Circuit Clerk
　　　　　　　　　　　　　　　　　　　　　　　Date: **4/8/2022**

---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

　　To: _____

☐ Not Served because: _____

Date: _____, 20____　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　Served By

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　Title

---

Summons ID: 448987730101367@00000998828
CIRCUIT: 22-CI-001723 Certified Mail
GOODWIN, TARRA VS. FIRSTSOURCE SOLUTIONS, LLC





NO. _____  JEFFERSON CIRCUIT COURT
DIVISION _____
JUDGE _____

*Electronically Filed*

**TARRA GOODWIN**                                                                                          **PLAINTIFF**

V.

**FIRSTSOURCE SOLUTIONS, LLC.**

SERVE:
      CORPORATION SERVICE COMPANY
      421 WEST MAIN STREET
      FRANKFORT, KENTUCKY 40601

## COMPLAINT

Plaintiff Tarra Goodwin, for her Complaint against Defendant Firstsource Solutions USA, LLC, states:

### PARTIES

1. Plaintiff Tarra Goodwin is a Kentucky resident, residing in Louisville, Jefferson County, Kentucky.

2. Defendant Firstsource Solutions USA, LLC is a for-profit corporation registered to do business in Kentucky through the Kentucky Secretary of State. Its principal office is located at 10400 Linn Station Road, Suite 100, Louisville, Kentucky 40223. Its Registered Agent is Corporation Service Company, 421 West Main Street, Frankfort, Kentucky 40601.



## JURISDICTION AND VENUE

3. Plaintiff brings her cause of action under the Kentucky Civil Rights Act, KRS Chapter 344, the Family and Medical Leave Act, codified at 29 U.S.C. §§ 2601, *et seq*, and Kentucky Wages and Hours Act, KRS Chapter 337.

4. At all times relevant to this action, Tarra Goodwin was an employee as defined in the Kentucky Civil Rights Act, KRS 344.030(5)(a) and Defendant Firstsource Solutions USA, LLC was an employer as defined in KRS 344.030(2).

5. Jurisdiction and venue are proper in Jefferson Circuit Court pursuant to KRS 23A.010, KRS 452.450, and KRS 344.450. The actions and omission at issue in this matter occurred in Jefferson County.

## FACTS

6. Tarra Goodwin began working at Firstsource in May of 2020 as a Customer Service Representative. Tarra's initial time at Firstsource passed without issue.

7. However, Tarra's experience at Firstsource changed when, in September of 2020, Tarra informed Firstsource's agents that she was pregnant.

8. Tarra's pregnancy was deemed high-risk by her physicians. Due to this designation, Tarra had an above-average number of prenatal check-ups.

9. This was the first issue that Tarra faced, as Firstsource policy at the time required a supervisor to request leave for their subordinates. In Tarra's case, this supervisor was Tim Johnson.

2

10. Tim would routinely tell Tarra that leave had been approved, and when Tarra would attend the appointment, she would afterwards find out that the time missed was not excused.

11. This happened for at least three dates that Tarra was marked absent – January 6, January 21, and April 13, 2021.

12. Several times, Tim would admit to Tarra that he had neglected to do his job and submit her request.

13. Even when Tim would submit the request, Firstsource would routinely deny the request to attend these necessary appointments.

14. Firstsource went beyond merely preventing Tarra from easily attending these appointments, as the point system utilized for bonuses and productivity, actively penalized Tarra for these absences which were dictated as necessary by her physicians.

15. Maelena Miller, a senior coordinator for the company, informed Tarra that the absences in April and May for prenatal appointments would need to be made up.

16. This "missed time" was a result of weekly prenatal appointments, known to Firstsource, which were necessary due to Tarra's high-risk pregnancy.

17. This was not the only concerning behavior by Firstsource's agents. While Tim knew that Tarra's pregnancy was high-risk, he escalated her duties at work.

18. For instance, in her last several months, Tarra was forced to perform some of Tim's duties, such as performing systems testing at 5:00 a.m, conducting

3

meetings on Tim's behalf, and being forced to fulfill the job duties of another employee.

19. Tim expected her to fulfill these added tasks without any effect on her ordinary 8-to-5 job duties, while being nine months pregnant.

20. This conduct by Tim, increasing Tarra's workload and disregarding her medical needs, cannot be explained by valid business needs.

21. Tarra felt the pressure from Tim to abandon the job, as the occasion of her pregnancy needs was met with increased duties.

22. Due to the oncoming birth of her child, Tarra requested medical leave from Firstsource.

23. Firstsource responded on June 3, 2021. Due to Tarra being a few days shy of the necessary year of service time to trigger FMLA, Tarra took provisional medical leave that covered the gap.

24. Firstsource's leave excused Tarra for her sudden absence beginning May 15 to May 27, 2021.

25. After that time, Tarra was approved for six weeks of FMLA, beginning May 28 to July 9, 2021.

26. Due to financial hardships faced by Tarra during her unpaid leave, she sought subsistence benefits. The application process for these benefits required her to seek out verification from Firstsource as to when her last paycheck had been received before going onto unpaid leave.

4

27. Initially, Tarra asked Tim Johnson for this information, but although Tim told Tarra that he would send her the information, he never did.

28. In turn, Tarra specifically stated in her communications with Human Resources Manager Jason Weaver that she was seeking verification of her last paycheck prior to returning to work.

29. However, on June 18, 2021, Jason Weaver began the process of seeking a letter for Tarra's last day of work, essentially an administrative termination while Tarra was on protected leave. Tarra, being copied on these emails, immediately reclarified her position that she merely needed a copy of her last paycheck before leave.

30. On June 25, 2021, having not yet been released by her doctor to return to work, Tarra requested an extension of her FMLA to the full twelve weeks allowance. This request was made to Amy Logsdon, a Benefits and Compensation Specialist for Firstsource.

31. Amy informed Tarra that the full twelve weeks would push her FMLA leave to August 19, 2021, and that she would be expected to return on August 20, 2021 as FMLA would then be exhausted.

32. Even while dealing with Amy Logsdon to continue her protected leave, Tarra was fending off the continued administrative termination begun by Jason Weaver.

33. On June 28, 2021, Tarra was contacted by Human Resources Generalist Jessica Levrault for an end of employment exit interview.

5

34. Tarra again responded that she had not quit and stated that the continued actions by Firstsource to state that she had was casing her stress and effecting her ability to breastfeed her newborn child.

35. In early July, Tarra spoke with David Gower, who was Tim Johnson's supervisor.

36. David confirmed that Tarra was not being terminated, and that the problem in the system would be fixed before it was time for her to return to work at the end of her medical leave.

37. On July 9, 2021, even though Tarra had informed multiple individuals that she intended to return to her job and had received reassurances from those in her chain of command, Tarra received a letter from Human Resources Generalist Barbara Campbell.

38. In this letter, it stated that Tarra had been terminated on June 28, 2021.

39. In the system that Tarra had access to, it stated that she was terminated de to a "failure to return from LOA – voluntary," and this status was updated on June 17, 2021.

40. Immediately after receiving this letter, Tarra reached out to Tim Johnson. Tim had been with the company for approximately eight years, and ought to have been well aware of the administrative processes. Tarra told Tim, "I have a question Barbara just sent me the letter I needed until I return at the end of my FMLA but its still stating I was terminated on June 28th but David stated last week

6

or the week before he was going to fix it because of the Miss understanding [sic]. Do I still have my job?"

41. Tim responded to that message saying that Tarra still had her job and that everything was fixed. Prior to this conversation, Tarra had informed Tim that she would not be back until August 20, 2021, as her FMLA had been extended.

42. On August 20, 2021, Tarra attempted to return to work. However, she was unable to log-on to her terminal. Once this occurred, Tarra immediately contacted Firstsource IT, who informed her that she had been terminated and no longer had access to any Firstsource system.

43. Meanwhile, Tim asked Tarra in a text message, "Hey was u able to get in?" Tarra responded that she had been told by IT that she had been terminated.

44. Tarra also communicated to Tim how this was impacting her life, communicating that she was suffering from postpartum depression and that a close family member was in the hospital.

45. Tim immediately responded that he would handle the situation.

46. Even knowing how this would impact Tarra's life, Tim never "handled the situation." He texted Tarra on August 23, 2021 stating that he was still working on it, and later a text saying, "hey Tarra. How u doing?"

47. Neither of these texts informed Tarra that she was being reinstated to her position, and Tarra was left unemployed after her period of protected medical leave and the birth of her child.

7

48. As of the date of this Complaint, Firstsource has not confirmed to Tarra that her job has been restored.

49. No valid reason for failing to restore Tarra to her job has been supplied.

50. Firstsource has been made well aware that Tarra did not voluntarily abandon her job.

51. Tarra was never paid for the days that she reserved for work at Firstsource, and for which she presented as a ready, willing, and able worker who was not permitted to resume her duties.

52. It is company policy to pay workers who are put off their duties for no fault of their own, but Firstsource's agents have failed to timely tender any payment of those wages to Tarra.

53. At all times relevant to this action, Firstsource authorized, ratified, or should reasonably have anticipated the acts of its agents, including Tim Johnson, Maelena Miller, David Gower, Amy Logsdon, Barbara Campbell, Jason Weaver, and Jessica Levrault.

**COUNT ONE – FAILURE TO ACCOMMODATE PREGNANCY NEEDS**

54. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

55. Kentucky Revised Statutes Chapter 344, the Kentucky Civil Rights Act (KCRA), prohibits discrimination based on gender and pregnancy. *See* KRS 344.040; KRS 344.030(8)(a).

8

56. Plaintiff is an employee within the meaning of the KCRA, and Defendant is an employer under that law.

57. The enactment of the Kentucky Pregnant Workers Act (KPWA), codified by 2019 Ky. Acts ch. 200, strengthened protections for pregnant workers in Kentucky.

58. Plaintiff sought a reasonable accommodation for her pregnancy-related conditions from her employer, including but not limited to, the ability to attend medical appointments dictated as necessary by her physicians.

59. The employer refused to accommodate the needs Plaintiff and her doctor expressed were necessary due to Plaintiff's pregnancy.

60. Plaintiff was singled out for disparate treatment, as she was subjected to increased job demands, penalties for attending medically necessary appointments, and eventual termination.

61. The employer failed to engage in any interactive process to explore meaningful accommodations.

62. The employer's agents required Plaintiff to make up time missed for pregnancy related medical appointments, in violation of the KCRA.

63. The employer has identified no undue hardship associated with accommodating this pregnant worker in the manner her doctor proposed.

64. Defendant's failure to accommodate Plaintiff evinces illegal bias against pregnant workers, in violation of the KCRA.

65. Plaintiff is entitled to all relief, legal and equitable, available under the KCRA, including the award of damages and attorneys' fees.

9

## COUNT TWO – GENDER AND PREGNANCY DISCRIMINATION

66. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

67. Plaintiff was a female, pregnant employee of Defendant. The circumstances alleged in this Complaint qualify Plaintiff for protection under the KCRA's protections for female and/or pregnant workers.

68. Defendant is an employer within the meaning of the KCRA, and Plaintiff is an employee under that law.

69. Defendant engaged in adverse employment actions against Plaintiff, including, but not limited to, increased job demands, penalties for attending medically necessary appointments, and eventual termination.

70. Plaintiff is informed and believes that her gender and/or pregnancy was a motivating factor in Defendant's adverse actions and discrimination.

71. Plaintiff's male counterparts have not received similar treatment. They were not subjected to increased job demands, penalties for attending medically necessary appointments, and eventual termination.

72. The adverse employment action occurred under circumstances that raise reasonable inferences that the Plaintiff's gender was a determining factor in the decision to impose the adverse employment actions.

73. Plaintiff is entitled to all relief, legal and equitable, available under the KCRA, including the award of damages and attorneys' fees.

10

## COUNT THREE – KCRA RETALIATION

74. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

75. Beyond its protections from discrimination, the KCRA renders it illegal for a person or company to retaliate against a person who opposes violations of the KCRA – including the denial of reasonable pregnancy accommodations. *See* KRS 344.280.

76. Plaintiff's act of seeking an accommodation for her pregnancy was a protected activity.

77. Plaintiff believed in good faith that she was making a valid pregnancy-related request.

78. Plaintiff's protected actions were known by Defendant.

79. Instead of being accommodated based on her protected status and necessary medical appointments, Plaintiff immediately experienced retaliation after her protected activity of seeking pregnancy-related accommodation.

80. The retaliatory actions were caused by Plaintiff's protected actions.

81. Defendant's reaction to Plaintiff's protected activity was increased job demands, penalties for attending medically necessary appointments, and eventual termination.

82. These adverse actions are the kind of conditions that a reasonable employee would find materially adverse, such that they would dissuaded a reasonable worker from making or supporting a charge of discrimination.

11

83. Under the Kentucky Civil Rights Act, these instances of retaliation are actionable. *See* KRS 344.280(1).

84. Plaintiff is entitled to all relief, legal and equitable, available under the KCRA, including the award of damages and attorneys' fees.

## COUNT FOUR – FAMILY AND MEDICAL LEAVE ACT

85. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

86. Under the Family and Medical Leave Act, codified at 29 U.S.C. §§ 2601, *et seq.* ("FMLA"), employers are prohibited from interfering with, restraining, or denying the exercise of any right provided under the FMLA. 29 U.S.C. § 2615(a)(1).

87. "An employer may not discriminate or retaliate against an employee for taking FMLA leave." *Hunter v. Valley View Local Sch.*, 579 F.3d 688, 690 (6th Cir. 2009); 29 U.S.C. § 2615(a)(2).

88. That body of law also makes it illegal for an employee to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2).

89. Plaintiff invoked her rights under the FMLA for the twelve weeks after her child's birth.

90. Plaintiff's invocation of her FMLA rights was known by Defendant.

91. Defendant actively interfered with her FMLA leave by attempting to terminate her routinely during her period of protected leave. Plaintiff was prevented from enjoying her rights under the FMLA, resulting in medical

12

92. Defendant also failed to restore Plaintiff to her job at the end of her leave.

93. Defendant failed to act in good faith with respect to Plaintiff's FMLA rights.

94. Plaintiff is entitled to recover lost wages, benefits, and liquidated damages in an amount equal and in addition to lost wages, plus interest and attorneys' fees.

## COUNT FIVE – KENTUCKY WAGES AND HOURS ACT

95. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

96. KRS 337.020 and KRS 337.055 require the payment of wages owed to hourly workers like Plaintiff.

97. Despite Plaintiff's presentation for work, at Defendant Firstsource's behest, she was not paid for the days she was ready, willing, and able to serve the company.

98. Under the ordinary practices of the company, a worker who presented for work but was administratively or technically prevented from performing work is supposed to be paid for the time.

99. Defendant Firstsource's refusal to pay Plaintiff the agreed-upon wage timely is a violation of KRS 337.060.

13

100. Defendant Firstsource owes to Plaintiff all unpaid wages for dates that she reserved for service to Firstsource, but for which she was not made able to work, and also not paid.

101. Plaintiff is entitled to hold Defendant Firstsource accountable for its violations of the Kentucky Wages and Hours Act under KRS 337.990 and KRS 446.070.

102. Plaintiff is entitled to the unpaid wages, liquidated damages, and her attorneys' fees and costs expended in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Tarra Goodwin respectfully prays that this Court:

a. Declare Defendant's conduct in violation of Plaintiff's rights;

b. Award Plaintiff compensatory damages in such amounts as shall be proven at trial for her economic and other losses, including, but not limited to, back pay, and front pay in lieu of reinstatement to the extent Defendant's conduct has rendered reinstatement impracticable;

c. Award Plaintiff damages against the Defendant in an amount to be proven at trial for the humiliation, embarrassment, personal indignity, apprehension about her past, current and future economic well-being, emotional distress, and mental anguish, which have been inflicted upon Plaintiff by each Defendant's wrongful acts;

14

d. Liquidated damages due to Defendant's bad faith engagement with Plaintiff's FMLA leave.

e. Any and all equitable relief to which Plaintiff appears entitled, including reinstatement, promotion, and any appropriate injunctive relief;

f. Award Plaintiff pre-judgment and post-judgment interest;

g. Award Plaintiff her attorneys' fees and costs incurred pursuing this matter; and,

h. Grant Plaintiff such further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a jury to try all issues triable by jury.

Respectfully submitted,

*/s/ Robyn Smith*
Robyn Smith
Adam Johnson
4350 Brownsboro Road
Suite 110
Louisville, Kentucky 40207
firm@robynsmithlaw.com
(502) 893-4569
*Counsel for Plaintiff*

David L. Nicholson, Jefferson Circuit Clerk
600 West Jefferson Street
Louisville, KY 40202-4731

**USPS CERTIFIED MAIL**

9236 0901 9403 8372 3522 86

Case Number: 22-CI-001723

Restricted Delivery
CORPORATION SERVICE COMPANY
421 WEST MAIN STREET
FRANKFORT, KY 40601

### KCOJ eFiling Cover Sheet

Case Number: 22-CI-001723

Envelope Number: 4489877

Package Retrieval Number: 448987730101367@00000998828

Service by: Certified Mail

Service Fee: $ 0.00

Postage Fee: $ 13.96

The attached documents were generated via the Kentucky Court of Justice eFiling system. For more information on eFiling, go to http://courts.ky.gov/efiling.

Presiding Judge: HON. OLU A. STEVENS (630305)

**CERTIFIED MAIL**™



NEOPOST
04/11/2022
US POSTAGE $013.73

ZIP 40601
041M11456493

4060181815 C00G